IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| **ILENE FELDMAN** | * |
|  | * |
| **Plaintiff,** | * |
|  | * |
| v. | *     Case No.: GJH-14-0672 |
|  | * |
| **NVR, INC.,** *et al.* | * |
|  | * |
| **Defendants.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This is a negligence action brought by Plaintiff Irene Feldman against Defendants NVR, Inc., Ryan Homes, NV Homes, and Classic Group, LLC[1] arising out of a trip and fall incident. This Memorandum Opinion addresses Defendants' Motions for Summary Judgment, ECF Nos. 21 and 25, and supporting memoranda, ECF Nos. 21-1 & 25-1; Plaintiff's Oppositions, ECF Nos. 23 & 27; and NVR, Inc., Ryan Homes, and NV Homes' Reply,[2] ECF No. 24. A hearing is unnecessary. *See* Local Rule 105.6. For the reasons stated below, Defendants' Motions for Summary Judgment are GRANTED.

---

[1] Summary judgment was previously granted in favor of Montgomery County. *See* ECF No. 17.

[2] In the Complaint, Plaintiff lists NVR, Inc., Ryan Homes, and NV Homes as separate Defendants, however, these Defendants assert that Ryan Homes and NV Homes are mere trade names of NVR, Inc. NVR Answer, ECF No. 14, at 1 n. 1; NVR Mot. at, at ¶ 4, ECF No. 21-2. The Court will refer to NVR, Inc., Ryan Homes, and NV Homes collectively as NVR.

**I.      BACKGROUND**

On March 15, 2011 at approximately 3:00 p.m, Plaintiff was walking in Gaithersburg, Maryland on the sidewalk of West Watkins Mill Road near its intersection with Forest Preserve Drive. Pl. Comp. at ¶ 3–4, ECF No. 1. When she attempted to cross over Forest Preserve Drive, she "was caused to trip and fall by an uneven curb at the apron of the island median."[3] *Id.* Plaintiff alleges that "there were no warning signs, markings or other indicators of this dangerous condition." *Id.* at ¶5.  As a result of her fall, Plaintiff alleges she suffered severe bodily injuries. *Id.* at ¶ 11.

At the time of Plaintiff's purported trip and fall, the road surfaces of Watkins Mill Road and Forest Preserve Drive had only been paved with base coat; the road did not have a top coat of asphalt. Sack Aff. at ¶ 17, ECF No. 21-2. While "a curb cut entrance" to Town Center Boulevard had been constructed with an asphalt base coat, the remainder of the road had not been cleared. *Id.*  The island median, with a curb and curb apron, had been created with poured concrete. *Id.* Due to the lack of top coat on the road, the road surface was approximately one to one and a half inches lower than the lip of the white concrete island median curb. *Id.*; *see also* letter from Stephen Gensemer, Esq., dated August 3, 2012 with attached photos ("Photos"), ECF

---

[3]     In an affidavit attached to NVR, Inc., Ryan Homes, and NV Homes' Motion for Summary Judgment ("NVR Mot."), the Vice President and General Counsel of NVR, Inc., James A. Sack, asserts that Plaintiff is mistaken as to the exact location of her trip and fall. Aff. of James M. Sack ("Sack Aff."), ECF No. 21-2 at ¶ 15–16. Plaintiff alleges she was crossing over Forest Preserve Drive when she tripped on the curb at a median. Pl. Comp. at ¶ 4, ECF No. 1. Based on the layout of the roads, according to Mr. Sack, Plaintiff would have been on the opposite side of Watkins Mill Road, where Forest Preserve Drive turns into Town Center Boulevard. Sack Aff. at ¶ 16, ECF No. 27-2. A map of the town center phasing plan shows the intersection in question: the Forest Preserve Drive side does not depict any median, whereas the opposite side (Town Center Boulevard) does depict a median. *See* NVR Reply, Phasing Plan, ECF No. 24-1. Ultimately, however, the exact address of the trip and fall does not impact the Court's analysis.

No. 21-7. The following two pictures, taken a few days after the incident, show where Plaintiff tripped:



Photos, ECF No. 21-7.

Watkins Mill Town Center is a mixed use development in Gaithersburg, Maryland. Sack Aff. at ¶ 5, ECF No. 21-2. BP Residential Investments, LLC ("BP") was originally responsible for the construction and maintenance of Watkins Mill Road, including the medians on that road within the development. *See* NVR Mot., Declaration of Covenants, Conditions, and Restrictions [of the] Watkins Mill Town Center Homeowners Association ("[Watkins] HOA"), Inc. at 53, ECF No. 21-4; *see also* Sack Aff. at ¶ 7, ECF No. 21-2. Sometime in 2009, MTG Acquisition, LLC ("MTG") acquired portions of the Watkins Mill Town Center and assumed the rights and responsibilities of BP. Sack Aff. at ¶ 9–10, ECF No. 21-2; *see also* NVR Mot., Assignment of Declarant's Rights/Watkins Mill Town Center HomeOwners Association, Inc., ECF No. 21-5.

NVR is a company that constructs and sells single-family townhouses. Sack Aff. at ¶ 4, ECF No. 21-2. On October 12, 2009, NVR agreed to purchase certain lots in the Watkins Mill Town Center from MTG. *Id.* at ¶ 10; *see also* NVR Mot., Lot Purchase Agreement, ECF No. 21-6. Under the agreement, MTG was responsible for work involving roads that serviced the lots purchased by NVR. Sack Aff. at ¶ 12, ECF No. 21-2. MTG's responsibilities as to the lots,

3

included, but were not limited to, installing curbs and gutters, paving streets and surfaces, and making streets and roads acceptable for use. Lot Purchase Agreement ¶ 14(a), ECF No. 21-6. Driveway aprons and sidewalks adjacent to the lots were NVR's responsibilities as the buyer. *Id.* at 51, Table D.11 & 12. Classic Group, LLC was the development manager of the property. Classic Group Mot. at 5 n.1, ECF No. 25-1.

On March 7, 2014, Plaintiff filed the instant action against NVR, Classic Group, LLC, and Montgomery County, Maryland. ECF No. 1. The Court has since dismissed Montgomery County from this case.[4] On April 15, 2014, Classic Group, LLC filed an answer, and NVR filed its answer on April 28, 2014. ECF No. 5 & ECF No. 14.

Plaintiff alleges that each remaining defendant separately "owned, operated, controlled, leased and/or held itself out as owner and/or developer of the land where . . . [she] was walking at the time of the incident." Pl. Compl. at ¶¶ 7, 15, 23, & 31, ECF No. 1. Thus, Plaintiff asserts, Defendants owed her a number of duties, including, but not limited to, the duty to:

> (a) inspect the premises to discover any unreasonably dangerous conditions which they knew or had reason to know existed and to which pedestrians would be exposed, (b) post warnings about any unsafe or unreasonably dangerous conditions in such a way as to ensure that the persons intended to be protected by those warnings would, in fact, be able to see the same and appropriately adjust their conduct, and (c) to otherwise ensure that the land, including but not limited to all roads, sidewalks, medians, curbs and curb aprons was maintained in a reasonably safe condition such that no unreasonable

---

[4] On April 4, 2012, Montgomery County filed a motion for summary judgment stating that indisputable facts demonstrated that it had no ownership, control, or maintenance responsibilities over the area where Plaintiff alleges she was injured. Montgomery County asserted, and the Court agreed, that Montgomery County was not to accept maintenance responsibilities of Watkins Mill Road until completion and final acceptance of the road. Mont. Cnty. Mot. at 4, ECF No. 3-1. Watkins Mill road was not completed and Montgomery County did not accept maintenance responsibilities until July 30, 2012 (after Plaintiff's trip and fall). *Id*. at Ex. 1. On May 14, 2014, the Court granted Montgomery County's motion for summary judgment and entered judgment in their favor. ECF No. 17.

> threat of harm would be posed to invitees, customers, visitors or others on the premises.

*Id.* at ¶¶ 8, 16, 24, & 32.

Plaintiff alleges that each defendant breached the above duties by failing to inspect, or in the alternative, to post warnings about the allegedly dangerous condition and that, as a direct and proximate result of Defendants' breach, she has "suffered severe bodily injuries, which caused her and will continue to cause her severe physical pain, emotional distress and permanent disability, impairment and disfigurement." *Id.* at ¶ 11. Plaintiff requests $600,000 in damages. *Id.* at ¶ 47.

## II.     STANDARD OF REVIEW

Summary judgment is properly granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 806 (4th Cir. 2007) (*citing* Fed.R.Civ.P.56(c)). In review of a motion for summary judgment, the facts are to be considered in the light most favorable to the nonmoving party, drawing all justifiable inferences in that party's favor. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). However, if the admissible evidence blatantly contradicts the non-movant's version of the facts, so that no reasonable jury could believe them, a court should not adopt the non-movant's version when ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 371, 380 (2007).

The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the

non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that there is a genuine issue for trial. *Miskin v. Baxter Healthcare Corp.*, 107 F.Supp.2d 669, 671 (D.Md. 1999). To satisfy this burden, the non-moving party "must produce competent evidence on each element of his or her claim." *Id.* Although the Court "must draw all reasonable inferences in favor of the non-moving party," that party "may not create a genuine issue of material fact through mere speculation, or building one inference upon another." *Id.; see Anderson v. Liberty Lobby, Inc* ., 477 U.S. 242, 255 (1986). Indeed, the existence of only a "scintilla of evidence" is not enough to defeat summary judgment. *Id.* at 252. Instead, the admissible evidentiary materials submitted must show facts from which the finder of fact could reasonably find in favor of the non-moving party. *Id.*

### III.     DISCUSSION

In order to establish a *prima facie* case for negligence under Maryland law, a plaintiff is required to show: (1) that the defendant owed a duty to the plaintiff; (2) that defendant breached that duty; (3) that the breach caused the alleged injury; and (4) that the plaintiff suffered damages. *See Coleman v. United States*, 369 Fed. Appx. 459, 461 (4th Cir. 2010) (*citing Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 76, 642 A.2d 180, 188 (Md. 1994)). Defendants NVR and Classic Group contend that no duty was owed to warn Plaintiff because the elevated lip between the concrete curb and the asphalt street was an open and obvious risk. *See* NVR Mot. at 8–13, ECF No. 21-1; Classic Group Mot. at 3–6, ECF No. 25-1. The Court agrees.

In Maryland, a landowner's duty to protect pedestrians is "not from the customary, permissible uses and conditions, but dangers of a kind that would not be expected by foot travelers . . . . " *Coleman*, 369 Fed. Appx. at 461 (*quoting Leatherwood Motor Coach Tours Corp. v. Nathan*, 84 Md. App. 370, 382–83, 579 A.2d 797, 803 (Md. Ct. Spec. App. 1990)).

6

Further, "pedestrians are bound to protect themselves from ordinary uses, obstructions, and comparative roughness of the ground." *Leatherwood,* 84 Md. App. at 383, 579 A.2d at 803. Thus, "there is no right of recovery against a [defendant] if the defect is slight or trivial," or where the facts in the case lack circumstances "extraordinary by way of any hazardous defect." *Id.*

Moreover, it is well established under Maryland law that when the alleged condition that harmed an invitee is open and obvious, the invitee is not entitled to recovery. *Coleman*, 369 Fed. Appx. at 462. In *Coleman*, the court explained that the "invitor is not the insurer of the invitee's safety," and the invitee is responsible for exercising due care for their own safety, which includes a "duty to look and see what is around the invitee." *Id.* (*citing Tennant v. Shoppers Food Warehouse*, 115 Md. App. 381, 389, 693 A.2d 370, 374 (Md. Ct. Spec. App. 1997)). An open and obvious condition is one "where the condition and risk are apparent" and recognizable to "a reasonable person in the position of a visitor, exercising ordinary perception, intelligence, and judgment." *Coleman*, 369 Fed.Appx. at 462 (*citing* 65A C.J.S. Negligence § 639 (West 2009)).

Typically, whether a hazard is open and obvious is a jury question. *C & M Builders, LLC v. Strub*, 420 Md. 268, 299, 22 A.3d 867, 885 (Md. 2011). However, "where it is clear that any [reasonable] person [in plaintiff's position] must have understood the danger, the issue may be decided by the court." *Id.* (*citing* Prosser and Keeton, § 68, at 489); *see also Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1053 (4th Cir. 1986) (citing Virginia law as holding that "[i]f the defect is open and obvious, an injured pedestrian may not recover unless he can prove that external conditions prevented his seeing the defect or would excuse his failure to see it . . .").

*Gellerman v. Shawan Road Hotel Ltd. Partnership*, 5 F.Supp. 2d 351, 352 (D. Md. 1998) is quite similar to this case. There, the plaintiff was walking through a Maryland hotel parking lot

and tripped in close proximity to an uneven curb or sidewalk joint and fell to the ground. The accident occurred mid-morning on a sunny day. *Id.* at 353. The alleged defect was a small space between the horizontal plane of the curb and the adjoining sidewalk. *Id.* The plaintiff indicated that she did not find it easy to observe the defect because she was looking out for on-coming cars. *Id.* After carefully reviewing the photographic depictions of the location of the fall, the court granted summary judgment. *Id.* at 354. The court concluded that the layout provided a wholly unobstructed view in all directions from the plaintiff's vantage point and that the plaintiff would have seen "what was there to be seen had she been properly observant in the exercise of reasonable care for her own safety." *Id.* at 353–54. Under these circumstances, the court found, "as a matter of law, the condition of the curb/sidewalk joint . . . was open and obvious . . ." *Id.* at 353–54.

Here, Plaintiff asserts that the one to one and a half inches between the unpaved road surface and the curb was not an open and obvious condition. Pl. Mot's, ECF No. 23-1 at 4 & ECF No. 27-2 at 3. Specifically, Plaintiff states that "all other medians were properly leveled, and . . . [there was] no reason to be hyper-aware walking along the path as all other medians she had walked on had been safe." *Id.* NVR and Classic Group argue that the curb was obviously unfinished and the curb was easily distinguishable from the street by differences in materials, colors, and textures. NVR Mot. at 12, ECF 21-1; Classic Group Mot. at 3, ECF No. 25-1.

As was the case in *Gellerman*, there is photographic evidence in this case depicting the space between the road and the curb where the alleged fall took place. *See* Photos, ECF No. 21-7. The pictures show that there is a clearly visible elevated lip where the white concrete of the curb meets the black asphalt of the street. *See* Photos, ECF No. 21-7. No obstructions are depicted that would have obscured Plaintiff's view of the curb. *Id.* In fact, Plaintiff does not

8

argue that her view was obstructed in any way. The incident happened at 3:00 p.m., while it was still daylight, and Plaintiff has put forth no evidence, or even alleged, that there were any weather conditions that obstructed her view. *See* Pl. Compl. at ¶ 3. It is equally telling that Town Centre Boulevard is an unfinished road, making it unlikely that Plaintiff would have been preoccupied with traffic. *See* Sack Aff. at ¶ 17, ECF No. 21-2 (stating that only a curb cut entrance to Town Centre Boulevard had been constructed.).

In light of the photographic evidence depicting the location of the alleged fall, the Court finds that the condition and risks associated with the one to one and a half inch lip between the asphalt road surface and the concrete curb were apparent. Any reasonable person in Plaintiff's position, exercising ordinary perception and care, would have recognized the condition and the risks of the defect. *See Coleman*, 369 Fed.Appx. at 462 (*citing* 65A C.J.S. Negligence § 639 (West 2009)). Further, there was no obstruction preventing Plaintiff from seeing the defect. Thus, no reasonable juror could find the alleged defect in this case was not open and obvious and all Defendants are entitled to judgment as a matter of law.[5]

---

[5] Defendant NVR also argues that it did not owe a duty to Plaintiff because it did not own, possess, or control the property where Plaintiff fell. *See* NVR Mot. at 7, ECF No. 21-1. This issue need not be resolved as the Court finds the alleged dangerous condition of the curb was open and obvious and, therefore, Maryland law does not allow recovery.

## IV. CONCLUSION

For the reasons stated above, NVR's and Classic Group's motions for summary judgment are GRANTED.

A separate Order shall issue.

Dated: November 12, 2014

/S/
GEORGE J. HAZEL
UNITED STATES DISTRICT JUDGE